UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARVIN COTTON and
ANTHONY LEGION,

                Plaintiffs,

v.

DONALD HUGHES, *et al.*,

                Defendants.
_____/

Civil Action No. 22-10037

Judith E. Levy
United States District Judge

David R. Grand
United States Magistrate Judge

## ORDER ON PENDING MOTIONS (ECF Nos. 24, 26, 31, 41)

Before the Court is Defendants' Amended Motion to Show Cause the Charter County of Wayne and the Wayne County Prosecutor's Office ("WCPO") for Failure to Produce Unredacted Conviction Integrity Unit ("CIU") Memoranda Regarding Plaintiffs' Convictions, which was filed on August 19, 2022.[1]  (ECF No. 24).

An Order of Reference was entered on August 22, 2022, referring this motion to the undersigned for hearing and determination pursuant to 28 U.S.C. § 636(b)(1)(A).  (ECF No. 25).  Oral argument was held on September 20, 2022, after which the Court permitted the filing of supplemental and *amicus curiae* briefs and responses.  (ECF Nos. 35, 36, 37,

---

[1] On August 23, 2022, the WCPO filed a Motion to Strike Defendants' Amended Motion to Show Cause, arguing that it was filed in violation of the applicable Local Rules, without leave of court, and without seeking prior concurrence, as required by E.D. Mich. LR 7.1(a).  (ECF No. 26).  Although the Court agrees with the WCPO that there were certain procedural irregularities associated with Defendants' filing of the instant motion, the motion is not "redundant, immaterial, impertinent, or scandalous," and the WCPO's motion to strike it pursuant to Fed. R. Civ. P. 12(f) **(ECF No. 26)** is **DENIED**.

38).² The matter is now fully briefed and ripe for ruling.

A. Background³

This case arises out of the January 2001 murder of Jamond McIntyre in the City of Detroit. The investigation of this murder was conducted by defendants Donald Hughes, Walter Bates, Ernest Wilson, and Santonion Adams (collectively "Defendants") – all of whom are or were officers with the Detroit Police Department. Hughes was the "Officer in Charge" (the "OIC"). One person interviewed on the night of the murder was Kenneth Lockhart ("Lockhart"), who was present at the location of the shooting. At that time, however, Lockhart did not provide any names or descriptions of the shooters.

Three weeks later, in his capacity as OIC, Hughes met with Lockhart. Lockhart allegedly admitted to the OIC that he had not seen the shooters, but that he would nevertheless be willing to testify that the shooters were plaintiffs Marvin Cotton and Anthony Legion (collectively "Plaintiffs"), as well as a third person named Devonte Parks ("Parks"). Plaintiffs allege that OIC Hughes had it out for them because he believed they were "neighborhood thugs" and because Cotton had previously filed complaints against the Detroit Police Department. Thus, based solely on Lockhart's identification – which Hughes knew not to be based on personal observation – Plaintiffs and Parks were charged with McIntyre's murder in the Wayne County Circuit Court.

---

² The day before oral argument in this matter, the WCPO filed a Motion for Leave to File Supplemental Authority. (ECF No. 31). No response was filed, nor was any opposition to this motion expressed at oral argument. Thus, the WCPO's Motion for Leave to File Supplemental Authority (**ECF No. 31**) is **GRANTED**.

³ The following facts are taken from Plaintiffs' complaint. (ECF No. 1).

2

On October 19, 2001, a jury convicted Cotton and Legion[4] of first-degree murder and illegal use of a firearm in the commission of a felony; both men were sentenced to life in prison without the possibility of parole.

Subsequently, Plaintiffs filed various motions and petitions seeking post-conviction relief in both state and federal court. In April 2018, while Legion had an appeal pending in the Sixth Circuit and Cotton had a motion for relief from judgment pending in state court, the WCPO's CIU opened investigations into Plaintiffs' claims that they had been wrongly convicted. The purpose of these investigations was to determine whether the WCPO would oppose the relief sought by Plaintiffs in their respective post-conviction proceedings.[5] At the conclusion of the investigations, the WCPO entered into agreements with Plaintiffs' attorneys to request that the state court set aside the criminal convictions. On October 1, 2020, the state court ordered that both Cotton's and Legion's convictions be set aside.

The instant civil litigation followed, with Plaintiffs' principal claim being that the Defendants violated their 14th Amendment due process rights by fabricating evidence and by "deliberately choosing not to disclose to the prosecutor material and apparent exculpatory and/or impeachment evidence." (ECF No. 1, PageID.15, 23). On February 9, 2022, Defendants sent identical subpoenas to the WCPO regarding each of the Plaintiffs,

---

[4] The charge against Parks was dismissed because, despite Lockhart's testimony that Parks had been one of the shooters, Parks had a solid alibi.

[5] Indeed, the WCPO entered into agreements with Plaintiffs' attorneys to stay and/or adjourn the deadlines in the post-conviction proceedings so that the CIU could thoroughly investigate and analyze the grounds for relief presented before those courts.

3

requesting production of "[a] full and complete copy of any and all records, including documents from the original prosecution; all Conviction Integrity Unit records; and all exoneration records and files pertaining to [each plaintiff]." (ECF No. 24-2). In relevant part, the WCPO responded to Defendants' subpoenas by producing redacted copies of two confidential CIU memoranda, one regarding Cotton and the other regarding Legion (the "CIU Memoranda" or the "Memoranda"). The CIU Memoranda's unredacted portions provide the factual information reviewed by the WCPO in conjunction with its decision to request that the state court set aside the Plaintiffs' convictions, while the redacted portions reflect the author's mental impressions regarding that factual information.[6]

The WCPO maintains that it properly redacted portions of the CIU Memoranda as privileged work product, and it has objected to providing unredacted versions to Defendants. In their instant motion, Defendants seek an order compelling the WCPO to produce unredacted copies of the CIU Memoranda. (ECF No. 24, PageID.327).

**B.     Standard of Review**

Fed. R. Civ. P. 45(e)(2)(A) provides that a person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must expressly make the claim and "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Further, Rule 45(d)(3)(A)(iii) provides that a court must quash or modify a subpoena that

---

[6] As discussed below, the Court has reviewed the redacted and unredacted Memoranda *in camera*.

4

"requires disclosure of privileged or other protected matter, if no exception or waiver applies[.]" Because Plaintiffs' claims in this case arise under federal law, questions of discoverability and privilege are governed by federal law, not state law. *See* Fed. R. Evid. 501; *Ritchie v. Coldwater Cmty. Sch.*, No. 1:11-cv-530, 2013 WL 12421758, at *2 (W.D. Mich. Jan. 7, 2013) ("Because Plaintiff's § 1983 claim arises under federal law, this Court applies the federal law of privilege."); *Reed v. Baxter*, 134 F.3d 351, 355 (6th Cir. 1998) ("Questions of privilege are to be determined by federal common law in federal question cases.").

**C.    Analysis**

*1.    The CIU Memoranda Contain Opinion Work Product that the WCPO Has Properly Redacted*

Generally, "[t]he work-product doctrine protects an attorney's trial preparation materials from discovery to preserve the integrity of the adversarial process." *In re Professionals Direct Ins. Co.*, 578 F.3d 432, 438 (6th Cir. 2009) (citing *Hickman v. Taylor*, 67 S. Ct. 385 (1947)). As the *Hickman* court explained, the doctrine was developed to permit an attorney to "assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference … to promote justice and to protect [his] clients' interests." *Hickman*, 67 S.Ct. at 393. Federal Rule of Civil Procedure 26(b)(3) has essentially codified the work product doctrine, providing:

> (3) *Trial Preparation: Materials.*
>
> (A) *Documents and Tangible Things.* Ordinarily, a party may not discover documents and tangible things that are prepared in

>anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
>(i) they are otherwise discoverable under Rule 26(b)(1); and
>
>(ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
>(B) *Protection Against Disclosure.* If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Fed. R. Civ. P. 26(b)(3).

There are two types of "work product" material, "fact" work product and "core" or "opinion" work product. Fact work product is "written or oral information transmitted to the attorney and recorded as conveyed by the client," while opinion work product consists of the attorney's "mental impressions, opinions, conclusions, judgments, or legal theories." *In re Antitrust Grand Jury*, 805 F.2d 155, 163-64 (6th Cir. 1986) (citations omitted). As noted in Rule 26 (b)(3)(B), whereas a requesting party may be able to show its entitlement to fact work product, the Court must protect against the disclosure of opinion work product, "which is virtually undiscoverable." *See U.S. Fire Ins. v. City of Warren*, No. 10-13128, 2012 WL 2190747, at *4 (E.D. Mich. June 14, 2012).

Defendants present a few arguments as to why the unredacted CIU Memoranda are not entitled to work product protection. First, they argue that the Memoranda do not qualify as work product because it was "not objectively reasonable [to believe] that the CIU's review of Plaintiffs' convictions would lead to litigation involving the WCPO." (ECF No.

6

24, PageID.322). Second, Defendants argue that "even if the [M]emoranda constitute work product," they have satisfied Rule 26(b)(3)(a)'s "substantial need" requirement. (*Id.*, PageID.323). Finally, Defendants argue that by publicly releasing similar memoranda in other cases, the WCPO has waived the right to assert work product protection over the specific CIU Memoranda at issue in this case. (*Id.*, PageID.325). These arguments all lack merit.

### a. The CIU Memoranda Are Attorney Work Product and the Mental Impressions Reflected Therein Are Properly Redacted

Defendants' first argument mistakenly focuses on whether the WCPO could anticipate that *future separate* civil litigation would follow its review of Plaintiffs' convictions and creation of the CIU Memoranda. This ignores that the doctrine's principal application is with respect to materials prepared "for trial" in an existing case, and, as the WCPO explained, "at the time that [it] opened its investigation, both Plaintiffs had pending petitions and/or motions in court seeking relief from their convictions," a petition for habeas corpus and/or a motion for relief from judgment. (ECF No. 20, PageID.189). The CIU Memoranda were prepared specifically to determine whether Plaintiffs' pending requests for relief should be opposed and, if so, on what factual or legal bases. (*Id.*, PageID.189-90). Accordingly, to the extent the CIU Memoranda contain attorney mental impressions and analyses, those particular portions of the Memoranda constitute opinion work product and are properly redacted.

The Court recognizes that, on its face, Rule 26(b)(3)(A) only limits what one "party" may discovery from "another party," and that some courts have therefore held that "the

7

privilege [reflected in Rule 26] is unavailable [] where a prosecutor in a prior criminal investigation later objects to discovery of work product by a litigant in a related [civil] lawsuit." *Joseph v. Las Vegas Metro. Police Dept.*, No. 2:09-CV-966-HDM, 2011 WL 846061, at *2 (D. Nev. Mar. 8, 2011). *See also Schomburg v. New York City Police Dept.*, 298 F.R.D. 138, 142 (2014). But this view fails to recognize the work product doctrine's origins, and would lead to perverse outcomes, particularly with respect to opinion work product. As explained in *Lawrence for Estate of Hoffman v. Madison County*, No. 5:13-CV-383-GFVT-REW, 2015 WL 13636281, at *4-5 (E.D. Ky. Feb. 24, 2015):

> The Court finds the facile analyses in some of these cases oversimplified. Just because Rule 26(b)(3) textually does not encompass a non-party does not compel the conclusion that a non-party has no work product shield. This, if the end of the analysis, could lead to absurd access to the litigation files of non-parties, even in ongoing litigation. *Hickman*'s footprint is much broader, and Rule 26(b)(3) is but a partial capture of the principles of the case. *See United States v. Deloitte LLP*, 610 F.3d 129 (D.C. Cir. 2010) ("On the contrary, Rule 26(b)(3) only partially codifies the work-product doctrine announced in *Hickman*.") …. Further, Rule 45, which applies to non-party subpoenas, expressly envisions a non-party making the claim that information sought is protected trial preparation material. *See* Fed. R. Civ. P. 45(e)(2)(A) (describing mechanism for an individual withholding subpoenaed information "under a claim that it is privileged or subject to protection as trial-preparation material"). To simply say that Lockridge, as prosecutor, is not in the position of a party here should not conclude the analysis.
>
> The work product doctrine applies with much vitality in the criminal law context. *United States v. Nobles*, 95 S. Ct. 2160, 2170 (1975) ("Although the work-product doctrine most frequently is asserted as a bar to discovery in civil litigation, its role in assuring the proper functioning of the criminal justice system is even more vital. The interests of society and the accused in obtaining a fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure thorough preparation and presentation of each side of the case."). Thus, even where Rule 26(b)(3) might textually

>withhold protection in civil discovery of a prior criminal prosecution, courts have, as Lockridge now entreats, looked to common-law work product underpinnings to assess propriety of discovery. *See Schomburg []*, 298 F.R.D. 138, 142-43 (S.D.N.Y. 2014) ("While Rule 26(b) does not apply, the work-product doctrine articulated in *Hickman* ... and its progeny may."). . . .

*Lawrence*, 2015 WL 13636281, at *4-5.

Again, the common law makes clear that opinion attorney work product is, for good reason, "virtually undiscoverable." *See U.S. Fire Ins.*, 2012 WL 2190747, at *4. Whatever its potential use in *another case*, such core work product still represents the mental impressions and analyses of counsel during the course of his or her representation of a client in the *underlying* legal proceeding. Disclosing counsel's mental impressions could still jeopardize "the integrity" of *that* "adversarial process,"[7] *In re Professionals*, 578 F.3d

---

[7] Subsequent to oral argument, Defendants filed a motion to provide supplemental authority in which they assert that "the CIU is not subject to the adversarial process that characterizes virtually every other facet of the criminal justice system." (ECF No. 41, PageID.568). The motion relates to a recent Report and Recommendation in which a different magistrate judge found "unacceptable discovery violations occurred . . . in conjunction with [Kevin Herrington] successfully petitioning the CIU to vacate his conviction . . ." (*Id.*, PageID.569). Specifically, "it was revealed that Harrington lied about his involvement with the CIU recantation witnesses." (*Id.*). The court had also explained, "Harrington cannot rely on his exoneration to support his claims and at the same time conceal the identity of witnesses who may have participated in a scheme to fabricate the evidence that freed him." (*Id.*, PageID.570). Defendants contend that, as in *Harrington*, "the instant matter involves allegations that the CIU's subsequent investigation of Plaintiffs' convictions uncovered egregious witness testimony issues, including but not limited to affidavits recanting prior witness statements and trial testimony." (*Id.*). While the Court **GRANTS** Defendants' motion to provide supplemental authority **(ECF No. 41)**, their underlying arguments lack merit. First, the CIU's work *is* part of an adversarial process that could yield any number of possible outcomes, and which presumably often results in the trial court conducting an evidentiary hearing or other contested proceedings. Second, unlike in *Harrington*, here the salient *facts* have been disclosed to Defendants. As discussed above, the CIU Memoranda produced to Defendants redacted only the WCPO's mental impressions and conclusions. The factual material contained in the Memoranda was not redacted, and thus Defendants are free to use that information to conduct discovery and build their defense to Plaintiffs' claims in this civil case.

9

at 438, and, more broadly, chill counsel from mapping out legal theories and strategies. *Hickman*, 67 S. Ct. at 393.

Having conducted a thorough *in camera* review of the two CIU Memoranda, it is clear that the documents' "fact work product" portions have been produced. It is equally clear that, other than in a few minor respects,[8] the Memoranda's redactions consist entirely of the mental impressions, opinion, conclusions, and judgments of the attorneys who drafted them. For all of the reasons stated above, those redactions are proper.

### b. Defendants' "Substantial Need" Argument is Misplaced

Defendants argue that "even if the memoranda constitute work product, the work product doctrine is not a complete and total bar to production." (ECF No. 24, PageID.323). Specifically, Defendants argue that "work product is discoverable if it falls within the scope of discovery, the party seeking its production demonstrates a substantial need for the materials in preparation of its case, and is unable, without undue hardship, to obtain their substantial equivalent by other means." (*Id.*). In this case, Defendants argue that they have a substantial need for unredacted versions of the CIU memoranda because these are the only documents showing *why* the CIU believed the criminal charges against Plaintiffs should be dismissed. Defendants claim they require this information in order to adequately

---

[8] As discussed at oral argument, the Court did find a few instances in which redactions were made to factual material. *See Lawrence*, 2015 WL 13636281, at *5 (prosecutor may not redact "factual observations or empirical elements premised on police or third-party input" but may redact "his mental impression, strategies, and analyses"). Specifically, there should be no redactions in footnotes 8 or 20 of the Cotton memorandum, and there should be no redactions in footnotes 8 or 22 of the Legion memorandum. Accordingly, the WCPO shall make these corrections and provide revised redacted versions of the two CIU Memoranda to Defendants.

defend against Plaintiffs' claims in this civil case.

Defendants' argument is misplaced. Again, while a party may be entitled to "fact work product" upon the demonstration of a "substantial need," "opinion work product" – the only form of information the WCPO has redacted – is "virtually undiscoverable." *See U.S. Fire Ins.*, 2012 WL 2190747, at *4. *See also In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 294 (6th Cir. 2002) ("[A]bsent waiver, a party may not obtain the opinion work product of his adversary; i.e., any material reflecting the attorney's mental impressions, opinions, conclusions, judgments, or legal theories.") (internal quotations marks omitted). *See also* Fed. R. Civ. P. 26(b)(3)(B) (directing the Court, notwithstanding Rule (b)(3)(A)'s "substantial need" provisions, to "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney . . ."). Thus, regardless of Plaintiffs' alleged "substantial need" for the redacted material in the Memoranda, such opinion work product is not subject to disclosure.

c. *The WCPO Did Not Waive Work Product Protection*

Finally, Defendants argue that even if the redactions in the CIU Memoranda reflect what would otherwise constitute protected work product, the WCPO voluntarily waived any objection to producing the unredacted documents in this case because it produced *similar* memoranda, in unredacted form, to third parties in *other cases* involving exonerated individuals. (ECF No. 24, PageID.325-26). Again, the Court disagrees.

Counsel for Defendants conceded at oral argument that there has been no disclosure of the two unredacted CIU Memoranda at issue in this case. And Defendants have not presented any authority – nor is the Court aware of any – compelling the conclusion that

11

waiver of the work product protection in a *different* case, involving *different* exonerees, somehow constitutes waiver of the protections afforded to the CIU Memoranda in *this* case. *See In re King's Daughters Health Sys.*, 31 F.4th 520, 527 (6th Cir. 2022) (recognizing that any waiver of the attorney-client or work product privileges only extends to the "same subject matter"). Thus, any alleged waiver of the work product protection involving memoranda prepared by the CIU in conjunction with completely different criminal cases did not waive the work product protections that otherwise apply to the Cotton and Legion CIU Memoranda.

### D.  Conclusion

For the foregoing reasons, the Court **DENIES** Defendants' Amended Motion to Show Cause **(ECF No. 24)**. As set forth in footnote 8, *supra*, however, the WCPO shall produce corrected redacted versions of both the Cotton and Legion CIU Memoranda within seven (7) days of the date of this Order.

**SO ORDERED.**

Dated: November 7, 2022             s/David R. Grand
Ann Arbor, Michigan               DAVID R. GRAND
                                                 United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties' attention is drawn to Fed. R. Civ. P. 72(a), which provides a period of fourteen (14) days from the date of receipt of a copy of this order within which to file objections for consideration by the district judge under 28 U.S. C. §636(b)(1).

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 7, 2022.

s/Michael E. Lang
MICHAEL E. LANG
Case Manager